**UNITED STATES of America, Appellee,**

v.

**Lizardo CRIOLLO, Appellant.**

**No. 1335, Docket 91–1719.**

United States Court of Appeals,
Second Circuit.

Argued April 15, 1992.

Decided April 29, 1992.

Philip Katowitz, New York City, for appellant.

Bridget M. Rohde, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., and Peter A. Norling, Asst. U.S. Atty., on the brief), for appellee.

Before: TIMBERS, VAN GRAAFEILAND, and PRATT, Circuit Judges.

TIMBERS, Circuit Judge:

Lizardo Criollo appeals from a judgment entered on November 22, 1991 after a jury trial in the Eastern District of New York, Gerald E. Rosen, *District Judge*, of the Eastern District of Michigan, sitting by designation, convicting Criollo of one count of conspiring to distribute cocaine, in violation of 21 U.S.C. § 846 (1988), and one count of possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841 (1988). Criollo was sentenced to a 121 month term of incarceration on each count to run concurrently, followed by five years of supervised release on each count, and a $100 special assessment.

On appeal, Criollo challenges the court's announcement to the jury during the summation by Criollo's counsel that the court would not permit readbacks of trial testimony during the jury's deliberations.

For the reasons below, we reverse the judgment against Criollo and remand the case for a new trial.

I.

During two days of trial, the government relied primarily on the testimony of two Drug Enforcement Agency (DEA) agents and Alice Cuebas, a key cooperating participant in the controlled sale of cocaine that led to Criollo's arrest and conviction.

During his summation, Criollo's counsel told the jury that "at any point, if you should recall any testimony of any witness, it is your recollection that controls, [if the prosecutor] says a witness said something and you don't recall it that way, *you can call for a read-back if you wish.*" (emphasis added). The court immediately interrupted counsel's summation: "[T]here will be no re-reading of testimony." Counsel finished his summation without further interruption.

Following summation but before the court's jury charge, the court held a sidebar conference. During that conference, defendant's counsel asked the court to reconsider "this business of not permitting read-backs", claiming that

"by not permitting read-backs if requested ... the Court is interfering or invading with the function of the jury by not permitting them to review the evidence as they see fit or to call for portions that may be in dispute.

I think—I can't ask [the prosecutor] to join with me but it seeps [sic] so fundamental to me that the finder of fact is permitted to review the evidence as it sees fit.

Now, I just can't imagine a jury not being permitted to ask for a read-back."

The court refused to reconsider its long-standing policy against readbacks, stating:

"I probably had 45 jury verdicts in the Eastern District of Michigan. In my view they have all been fair jurors. They have all done a complete and fair job. In not a single case have I permitted read-backs.

Furthermore, some cases have not been two or three day trials, they have been three, four, five week trials.

Furthermore, I believe and I don't have any empirical evidence but *I believe it is the vast rule of the vast majority of judges—federal judges at least in this country, that they do not permit read-backs.*" (emphasis added).

The court denied counsel's subsequent motion for a mistrial.

During the jury charge that immediately followed, the court made no reference to its prohibition against readbacks. Rather, the court instructed the jury to send a note to him if it wished to examine any or all of the *exhibits* except the cocaine, firearm or ammunition involved in the case. The jury did not request any readback of testimony or exhibits during its ninety-minute deliberations.

The jury convicted Criollo of the narcotics charges as stated above. It acquitted him of carrying a firearm during a narcotics trafficking offense, in violation of 18 U.S.C. § 924(c) (1988).

Criollo now appeals his conviction, claiming the court's prohibition against readbacks as reversible error. We reverse and remand.

## II.

This circuit has never sanctioned a broad prohibition against readbacks announced to the jury before deliberations begin.

■ We have held that a court's decision to refuse to allow readbacks of testimony when requested by the jury during deliberations is within the court's broad discretion. *United States v. McElroy,* 910 F.2d 1016, 1026 (2 Cir.1990) (upholding court's interpretation of jury request for readback of only one particular portion of testimony); *United States v. Holmes,* 863 F.2d 4, 5 (2 Cir.1988) (upholding court's refusal of jury's request for readback of testimony that included highly prejudicial statements), *cert. denied,* 493 U.S. 830 (1989); *United States v. Damsky,* 740 F.2d 134, 138 (2 Cir.) (reviewing trial court's policy which urged jury to "exhaust [its] collective memory" before requesting a readback), *cert. denied,* 469 U.S. 918 (1984). Our decisions have emphasized that a court's response to a jury request for a readback should balance the jurors' need to review the evidence before reaching their verdict against the difficulty involved in locating the testimony to be read back, the possibility of undue emphasis on a particular portion of testimony read out of context, and the possibility of undue delay in the trial.

The government has directed us to no case in this Circuit that has reviewed a court's broad prohibition against readbacks announced to a jury prior to deliberations. Rather, our cases have considered the narrower issue of a court's denial of a jury request for a readback of a portion of testimony. In *Holmes, supra,* 863 F.2d at 5, while we acknowledged a court's broad discretion in denying a jury's request, we clearly indicated our preference for providing juries with readbacks of testimony when requested during their deliberations. *Id.* ("generally the better course of action is for a district court to allow the reading of testimony requested by the jury").

Similarly, in *Damsky,* we reviewed a court's instruction to the jury prior to their deliberations, urging them to attempt to

reconstruct testimony from their collective memory *before* requesting a readback of testimony. Unlike the court in the instant case, that court did not prohibit the jury from requesting a readback of testimony that they had difficulty recalling. We held that the instruction as given, coupled with the prosecutor's misstatement of evidence during summation, constituted error. *Damsky, supra,* 740 F.2d at 138 (ultimately finding that such error was harmless under the facts of the case). Furthermore, we went on to state that the policy of merely *discouraging,* readbacks "does not seem to be a particularly wise policy." *Id.*

## III.

 In the instant case, we emphatically decline to depart from this Circuit's stated preference for making readbacks available to juries. The government has suggested that the error in this case was harmless because (1) the trial was relatively short, with a limited number of witnesses and (2) the jury never actually requested a readback, which would have required the court to put its restrictive policy into effect. We disagree.

We have no way of determining whether the jury wanted to request a readback, but was chilled from doing so by the court's prohibition against readbacks stated in the midst of defense counsel's summation. Since this case was so short and involved only a few witnesses, we might well conjecture that any request for a readback would not be the result of a confused jury attempting to sort through reams of evidence, but rather such a request could indicate that the jury had a genuine inability to resolve serious questions of fact. *E.g., United States v. Rabb,* 453 F.2d 1012, 1014 (3 Cir.1971) (jury's request for readback following short trial with three witnesses could have reflected jury's doubt or disagreement over evidence).

We all know that juries not infrequently get into sharp disputes—whether the trial be long or short—as to the testimony of one or more witnesses. It strikes us as far better to try to have such disputes resolved by readbacks, rather than to end up with a hung jury, a mistrial and another trial.

## IV.

To summarize:

We hold that the district court erred in announcing before jury deliberations began a prohibition against readbacks of testimony.

Reversed and remanded for new trial.