SUMMARY ORDER

Mohamed Bahaa El Din Hamdy was convicted, following a jury trial in the United States District Court for the Western District of New York (Skretny, /.), of making a materially false statement and concealing a material fact in violation of 18 U.S.C. § 1001(a)(1)—(2), making and using a materially false document in violation of 18 U.S.C. § 1001(a)(3), and subscribing to a materially false statement on an immigration application in violation of 18 U.S.C. § 1546(a). He was sentenced principally to time served. We assume the parties’ familiarity with the underlying facts, the procedural history, and the issues presented for review.
Hamdy argues that the district court erred in admitting into evidence an unredacted version of a letter he sent military officials in support of his request for a discharge in lieu of trial by court martial, *30 also referred to as a Chapter 10 request. In that letter, Hamdy stated he “faced discrimination because of [his] religion and [his] race, and was called a terrorist” during his time in the military. Hamdy’s counsel moved to redact Hamdy’s reference to being “called a terrorist.” The district court admitted the unredacted letter after confirming that it was written by Hamdy.
Federal Rule of Evidence 403 permits a district court to exclude otherwise relevant evidence if its “probative value is substantially outweighed by the danger of unfair prejudice.” Hamdy relies on our prior holding that “[t]o avoid acting arbitrarily, the district court must make a conscientious assessment of whether unfair prejudice substantially outweighs probative value.” United States v. Salameh, 152 F.3d 88, 110 (2d Cir.1998) (per curiam) (citation and internal quotation marks omitted). We agree with Hamdy that the district court failed to conduct “a conscientious assessment of whether unfair prejudice” resulting from admission of the unredacted letter “substantially outweigh[ed its], probative value.” Thus, the district court acted “arbitrarily.” Nonetheless, we conclude that admission of the unredacted letter, even if error, was harmless.
Any prejudice resulting from admission of the unredacted letter was minimal. The reference to terrorism was contained in a string of complaints, made by Hamdy himself, about Hamdy’s alleged mistreatment while in the military. Thus, the reference did not imply that Hamdy faced actual charges of terrorism, but instead was merely intended to support Hamdy’s request for leniency in his discharge proceedings. Furthermore, to the extent that the instant statement reasonably could be characterized as objectionable, the government did not call attention to the statement when it was admitted or during argument; therefore, it is unlikely that jurors focused on the statement in rendering a verdict.
 Hamdy also argues that the district court plainly erred twice in responding to questions from the jury during deliberations. First, Hamdy argues that the district court had a duty to offer to read back testimony when the jury requested a transcript. Hamdy cites United States v. Zarintash, 736 F.2d 66 (3d Cir.1984), in which the Third Circuit held that it was error for the trial court not to order portions of testimony to be read back to the jury after it requested transcripts. Id. at 70-71. However, in Zarintash, the district court refused all requests by defense counsel to read testimony to the jury. Id. at 69. The trial court even refused to inform jurors that they could have testimony read back if requested. Id. In this case, the district court instructed the jury that it could not have transcripts because they did not yet exist, but made clear that testimony could be read back by the reporter.
Second, Hamdy contends that the district court improperly discouraged jurors from requesting that testimony be read back. This Court has “held that a court’s decision to refuse to allow readbacks of testimony when requested by the jury during deliberations is within the court’s broad discretion.” United States v. Criollo, 962 F.2d 241, 243 (2d Cir.1992). “[A] court’s response to a jury request for a readback should balance the jurors’ need to review the evidence before reaching their verdict against the difficulty involved in locating the testimony to be read back, the possibility of undue emphasis on a particular portion of testimony read out of context, and the possibility of undue delay in the trial.” Id.
*31 The district court’s responses to the jury-struck a fair balance between a willingness to read back testimony “if it helps,” and a desire to minimize the tedious process of locating and reading back portions of the transcript. The court’s responses were well within its broad discretion.
For the foregoing reasons, the judgment of the district court is AFFIRMED.