UNITED STATES of America, Appellee,

v.

William O. JENKINS, Appellant.

UNITED STATES of America, Appellee,

v.

Eric KERRY, Appellant.

Nos. 91–3240, 91–3257.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 13, 1992.

Decided Dec. 29, 1992.

Thomas W. Farquhar, Washington, DC (appointed by the court) for appellant William O. Jenkins.

Robert E. Morin, Washington, DC (appointed by the court) for appellant Eric Kerry.

Helene Kazanjian, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher, Roy W. McLeese, III and Peggy Kuo, Asst. U.S. Attys., Washington, DC, were on the brief, for appellee.

Before WALD, D.H. GINSBURG and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

Appellants William O. Jenkins and Eric Kerry challenge the sufficiency of the trial evidence to support their convictions on one count each of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d). Specifically, each appellant asserts that the trial evidence was insufficient to support a finding that he possessed the firearm involved. Because the record contains evidence that Jenkins was in constructive possession of the gun, his conviction is affirmed. Kerry's conviction, however, must be reversed for lack of sufficient evidence that he was ever in possession of the gun, constructively or otherwise.

In deciding this appeal, we must view the evidence in the light most favorable to the government, allowing the government benefit of all reasonable inferences that may be drawn from the evidence. *United States v. Smith,* 964 F.2d 1221, 1223 (D.C.Cir.1992). So viewed the record reveals the following facts.

Shortly after 1:00 a.m. on February 17, 1991, two uniformed District of Columbia police officers, Michael Anzallo and Robert Smallwood, responding to a call for assistance, visited a residence on 51st Street, N.W. in Washington and spoke with William Ray Howell who lived there. During their conversation, Howell heard a car door slam in the alley behind his residence and, upon investigation, saw appellant Kerry approaching from the direction of a 1979 blue Oldsmobile. When the two officers stepped outside into the alley, Kerry immediately turned about and began running toward the Oldsmobile. The officers pursued and intercepted Kerry about 10–20 feet short of the car. They then continued on to the car and discovered three men inside, two in the front seat and the third, appellant Jenkins, in back behind the front passenger. The seat behind the driver was empty.

The officers ordered the three men out of the car and then noticed what "looked like a pipe ..., sticking out from under a brown coat in the back seat." Tr. I–22. As it turned out, the partially concealed object was a sawed-off shotgun with the initials "W.J." inscribed on the forestock. The gun was unloaded and no ammunition was found in the car or on the persons arrested. Nor was the identity of the coat's owner ever determined. All four men were taken into custody.

Jenkins and Kerry were subsequently indicted on a single count of possessing an unregistered firearm in violation of 26 U.S.C. § 5861(d)[1] and tried together on that charge on May 28–29, 1991.[2] At the close of the Government's case-in-chief, each defendant moved for judgment of acquittal. Both motions were denied and the trial proceeded. Jenkins then testified in his defense, while Kerry declined to present any evidence. At the close of Jenkins's

---

1. The undisputed evidence was that at the time of their arrests neither Jenkins nor Kerry had registered any firearm.

2. Jenkins was also indicted for possessing a firearm while under indictment for a crime punishable by imprisonment of more than one year, in violation of 18 U.S.C. § 922(n), but that count was dismissed before trial.

case, each defendant renewed his motion for acquittal and the motions were again denied. Following deliberation, the jury returned guilty verdicts against both Jenkins and Kerry. Each now appeals his conviction on the ground that the evidence was insufficient to establish possession and that his motions for judgment of acquittal should therefore have been granted.

In evaluating a sufficiency of the evidence claim, we must sustain the verdict if the evidence, viewed most favorably to the government, is sufficient to permit a reasonable juror to find guilt beyond a reasonable doubt. *United States v. Lewis*, 626 F.2d 940, 951 (D.C.Cir.1980), *overruled in other regard by United States v. Lipscomb*, 702 F.2d 1049 (D.C.Cir.1983) (en banc). Thus, a jury's verdict may be overturned "only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Davis*, 562 F.2d 681, 683–84 (D.C.Cir.1977). Under this standard, Jenkins's conviction must be affirmed and Kerry's must be reversed.

■ To be convicted of unlawful possession of a firearm, a defendant must, of course, first be found to have been in possession of the firearm, whether actual or constructive. *See United States v. Foster*, 783 F.2d 1087 (D.C.Cir.1986). The government's theory here was that both Jenkins and Kerry were in constructive possession of the sawed-off shotgun. Constructive possession "may be shown through direct or circumstantial evidence of dominion and control over the contraband ... and may be found to exist where the evidence supports a finding that the person charged with possession was knowingly in a position to, or had the right to exercise 'dominion or control' over the [contraband]." *United States v. Lawson*, 682 F.2d 1012, 1016 (D.C.Cir.1982) (citations omitted). We

stress, however, that the "dominion and control" must be "knowing." *United States v. Hernandez*, 780 F.2d 113, 117 (D.C.Cir.1986). Thus, mere proximity or accessibility to contraband is not enough to establish constructive possession, *Foster*, 783 F.2d at 1089; *Hernandez*, 780 F.2d at 116; *United States v. Pardo*, 636 F.2d 535, 549 (D.C.Cir.1980); it must be " 'accompanied ... with testimony connecting the defendant with the incriminating circumstances.' " *United States v. Staten*, 581 F.2d 878, 885 n. 60 (D.C.Cir.1978) (quoting *United States v. Ratcliffe*, 550 F.2d 431, 434 (9th Cir.1976)). Thus, "where, as here, contraband is discovered in a place occupied by more than one person, 'the sufficiency of the evidence for jury consideration depends upon its capability plausibly to suggest the likelihood that in some discernible fashion the accused had a *substantial* voice vis-a-vis the [contraband].' " *Foster*, 783 F.2d at 1089 (quoting *Staten*, 581 F.2d at 884) (emphasis added by *Foster* court).

■ Under the foregoing principles we find no difficulty affirming Jenkins's conviction. Not only was he seated next to the shotgun when it was discovered, but the gun actually bore the initial letters of his first and last names, "W.J." Those initials provided the connecting circumstance required to enable a jury to infer *knowing* dominion and control over the gun from Jenkins's proximity to it. We therefore find the evidence sufficient to support Jenkins's conviction. We reach a contrary conclusion, however, regarding appellant Kerry's conviction.

■ Initially, we note that the parties disagree whether the reviewable evidence supports a jury finding that Kerry had earlier been seated behind the car's driver next to the illegal firearm so as to establish proximity.[3] Assuming, however, without so deciding, that such a finding is support-

---

3. The government argues such a finding is supported by (1) Anzallo's undisputed testimony that the only seat available when the officers reached the car was behind the driver next to the shotgun and (2) Jenkins's testimony, during his defense, that Kerry had in fact been so seated. Kerry argues in response that (1) Anzallo's testimony that, when he stopped Kerry, the

occupants of the car were "scrambling around" suggests that either the people or the gun or both may have moved before the officers reached the car, negating any reasonable inference that Kerry had earlier been seated next to the gun, and (2) Jenkins's testimony cannot be considered in determining whether Kerry's motion for acquittal at the end of the government's

able, we nevertheless conclude that a reasonable juror could not have fairly inferred constructive possession of the gun because the record lacks evidence of any additional circumstance to connect Kerry to it. The government cites two facts it contends can in combination with Kerry's proximity support possession, but we find neither sufficient.

First, the government asserts Kerry had knowing dominion and control over the shotgun because it was in plain view on the seat next to him and therefore readily accessible. The government's own evidence, however, refutes its "plain view" theory. Anzallo testified that when he first noticed the shotgun "it looked like a pipe to us, sticking out from under a brown coat in the back seat." Tr. I–22. It was only when Anzallo "seized" the object that "it later turned out ... it was a sawed-off shotgun." Id.

The government next argues Kerry implicated himself by taking "evasive action," namely, running back toward the car when he first saw the uniformed officers. We reject this argument as well. This court has on several occasions found evidence of evasive action relevant to constructive possession of contraband, but in each instance the action cited could readily be construed as an attempt by the defendant to avoid arrest for possessing the contraband. See, e.g., United States v. Gibbs, 904 F.2d 52, 57 (D.C.Cir.1990) (noting that "evasive conduct ... coupled with proximity may surpass the minimum threshold of evidence needed to put the question of guilt to a jury" and finding driver in constructive possession of drugs in car where he, inter alia, "took evasive action, driving into one parking lot and then another, then suddenly stopping by a trash dumpster"); Hernandez, 780 F.2d at 117, 120 (stating that "the fact that a defendant took evasive action in response to the presence of police can be considered in inferring constructive possession" and finding evidence supported possession of gun in car by driver who

"made a gesture toward the weapon immediately following an evasive turn of the car when confronted by a police cruiser"); United States v. Reese, 561 F.2d 894, 898 (D.C.Cir.1977) (finding evidence sufficient to support conviction for possession of drugs in car of driver who "attempted to evade police after a minor traffic violation and then tried to walk away from police after his car was stopped."). Not so here. When confronted by the officers, Kerry made no attempt to dissociate himself from the illegal gun or to divert attention from it. In fact, he took the one step most likely to lead to its detection: he ran directly toward the car where it was located. While this reaction was not necessarily inconsistent with possession of the shotgun, it was not particularly probative of it either. The government cannot therefore rely on this conduct to link Kerry to the gun.

For the preceding reasons, we conclude the trial evidence was sufficient to establish possession of the shotgun by Jenkins but not by Kerry. Accordingly, the conviction of William O. Jenkins is affirmed and the conviction of Eric Kerry is reversed.

*So ordered.*

---

case-in-chief was erroneously denied because that testimony had not yet been presented at the time of the motion, *see United States v. Johnson,* 952 F.2d 1407, 1411 (D.C.Cir.1992) ("[A] co-defendant's subsequent inculpatory testimony may not be considered in ruling upon a motion for a judgment of acquittal made after the close of the government's case-in-chief."). In light of our disposition, however, we need not resolve these disputes.