# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2004   Decided February 4, 2005

No. 03-3103

UNITED STATES OF AMERICA,
APPELLEE

v.

ROBERT D. GARNER,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cr00179-01)

———

*Mary E. Davis*, appointed by the court, argued the cause for the appellant.

*Elizabeth H. Danello*, Assistant United States Attorney, argued the cause for the appellee. *Kenneth L. Wainstein*, United States Attorney, and *John R. Fisher, Thomas J. Tourish, Jr.* and *Kenneth F. Whitted*, Assistant United States Attorneys, were on brief.

Before: GINSBURG, *Chief Judge*, and HENDERSON and ROBERTS, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Felon Robert D. Garner was convicted of possessing a firearm in violation of

18 U.S.C. §§ 922(g)(1) and 924(a)(2). He appealed his conviction on the ground that the district court erroneously admitted as prior bad act evidence under Federal Rule of Evidence 404(b) a police officer's testimony that Garner had been found in possession of a handgun under similar circumstances some four years earlier. Because the challenged testimony was admissible under Rule 404(b) to show that Garner knew of and constructively possessed the gun, we conclude the district court did not abuse its discretion in admitting the testimony and we therefore affirm Garner's conviction.[1]

## I.

In addition to the felon-in-possession count, Garner was indicted, along with co-defendant Troy Haywood, on one count of possessing cocaine base with intent to distribute it (in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C)) and one count of using a firearm in connection with a drug trafficking offense (in violation of 18 U.S.C. § 924(c)(1), (2)).[2] Garner and Haywood were tried in the district court June 5 to June 13, 2003. Viewed in the light most favorable to the government, *see United States v. Whitmore,* 359 F.3d 609, 613 (D.C. Cir. 2004) (citing *United States v. Graham,* 83 F.3d 1466, 1470 (D.C. Cir. 1996)), the trial evidence established the following facts.

On March 21, 2002, in Southeast Washington, D.C., law enforcement officers of the Washington Area Vehicle Enforcement team (WAVE), a multi-jurisdictional stolen auto

[1]In light of our conclusion that admitting the testimony was not error, we do not reach the government's argument that it was harmless error.

[2]Haywood was also indicted on one count of carrying a pistol without a license (in violation of D.C. Code § 22-4504(a)), which was dismissed on the government's motion.

task force, stopped a green car that had been reported stolen. Haywood was driving the vehicle and Garner was sitting in the front passenger seat. The officers approached the car and ordered its occupants to raise their hands in the air. Haywood complied but Garner did not; he simply sat staring ahead and smoking a cigarette as WAVE officers David Moseley and John Trainum tried unsuccessfully to open the passenger door and to persuade Garner to raise his left hand, which was in his waistband. Then, Moseley testified, Garner removed a "large, silver handgun" from his waistband, placed it under the passenger seat and resumed his smoking. 6/5/2003 p.m. Trial Tr. 101. Moseley immediately warned the other officers he had seen a gun. Trainum, who was standing behind Moseley, testified that he could not see Garner's left hand but observed him "going forward and back, forward and back" until "the one time when he was forward and stayed forward" which is when Moseley "called out gun" to him. 6/9/2003 a.m. Trial Tr. 92-93. A third WAVE officer, Danita Matthews, who was standing by the driver's window, testified she saw Moseley "moving around" with his hands "down, in a threatening manner" and then heard Moseley's gun warning. 6/5/2003 p.m. Trial Tr. 51-52. When the officers finally got the passenger door open, they wrestled Garner to the ground and secured him with handcuffs. Inside the car, they found a nine millimeter semi-automatic handgun under the front passenger seat and 43 zip-lock bags of cocaine base in a container on the driver-side floorboard. On the gun were found three latent fingerprints, only one of which was readable and was matched to Haywood's right index finger.

At trial the government offered the testimony of United States Park Police Officer Robert MacLean who stopped a car in Southeast Washington for a traffic violation on January 12, 1999. MacLean testified that Garner had been seated in the front passenger seat and that, after he removed Garner from the car, he found an ammunition clip in Garner's jacket pocket and also a loaded semi-automatic handgun fitting the clip under the

front passenger seat. Garner was ultimately convicted of carrying a pistol without a license in violation of District of Columbia law. Garner objected to MacLean's testimony as inadmissible evidence of a prior bad act under Rule 404(b) and as unfairly prejudicial under Federal Rule of Evidence 403. Rejecting his challenge, the district court granted the government's pretrial motion to admit the testimony and denied Garner's motion to exclude it during trial.[3] The court instructed the jury, however, that Maclean's testimony was "only offered with respect to the issues of intent and knowledge" and the jury could use the evidence "only to help [it] decide whether the government ha[d] proved beyond a reasonable doubt that the defendant, Mr. Garner, had the intent to possess the firearm" and "that he acted knowingly and on purpose and not by accident or mistake." 6/10/03 a.m. Trial Tr. 40-41.

On June 12, 2003 the jury acquitted both defendants of the cocaine possession count and the district court accordingly granted judgment of acquittal on the count alleging use of a firearm during a drug offense. On June 13, 2003 the jury convicted Garner of the felon-in-possession charge. On August 19, 2003 the district court sentenced Garner to 78 months' incarceration to be followed by three years of supervised release. Garner filed a notice of appeal on the same day.

## II.

Garner's sole challenge on appeal is to the admissibility of MacLean's testimony under Rule 404(b), which provides in relevant part:

(b) Other Crimes, Wrongs, or Acts.--Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other

---

[3]Garner did not appeal the district court's Rule 403 ruling.

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b). Garner contends the admission of MacLean's testimony was erroneous under this court's opinion in *United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004). "We review the district court's evidentiary rulings for abuse of discretion." *United States v. Whitmore*, 359 F.3d 609, 616 (D.C. Cir. 2004) (citing *United States v. Wilson,* 160 F.3d 732, 742 (D.C. Cir. 1998); *United States v. White,* 116 F.3d 903, 919 (D.C. Cir. 1997)). We conclude that the district court did not abuse its discretion in admitting MacLean's testimony because it was admissible under Rule 404(b). In reaching this determination we apply three recent opinions addressing admissibility under Rule 404(b).

First, in *Old Chief v. United States*, 519 U.S. 172 (1997), the United States Supreme Court held that the district court abused its discretion when, in a felon-in-possession prosecution, it rejected the defendant's offer to concede the fact of a prior felony conviction and admitted under Rule 404(b) evidence (the prior order of judgment and commitment) identifying the predicate felony as assault. The Supreme Court premised its decision, however, not on Rule 404(b) but on Rule 403, which authorizes the trial court to exclude otherwise "relevant evidence . . . if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[4]  *See Old Chief*, 519 U.S. at 180 ("The principal issue is the scope of

---

[4]The Court observed that "there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant" and that the "risk will vary from case to case." *Old Chief*, 519 U.S. at 185.

a trial judge's discretion under Rule 403, which authorizes exclusion of relevant evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " (quoting Fed. Rule Evid. 403)). The Court emphasized, as the language of Rule 403 makes clear, that the evidence excluded under Rule 403 as unfairly prejudicial nonetheless remains "relevant" and "admissible" under Federal Rules of Evidence 401 and 402. *See* 519 U.S. at 179 ("If . . . relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest not on the ground that the other evidence has rendered it 'irrelevant,' but on its character as unfairly prejudicial, cumulative or the like, its relevance notwithstanding.").[5] Similarly, with regard to Rule 404(b), the Court observed that "if, indeed, there were a justification for receiving evidence of the nature of prior acts on some issue other than status (*i.e.*, to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident,' Fed. Rule Evid. 404(b)), Rule 404(b) *guarantees* the opportunity to seek its admission," 519 U.S. at 190 (emphasis added), subject to the limitation that, "when a given evidentiary item has the dual nature of legitimate evidence of an element and illegitimate evidence of character," the court must make a determination

---

[5]Rule 401 provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

" 'whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other facts appropriate for making decision of this kind under 403,' " *id*. at 184 (quoting Advisory Committee's Notes on Fed. Rule Evid. 404, 28 U.S.C. App., p. 861).

Next, in *United States v. Crowder*, 141 F.3d 1202 (D.C. Cir. 1998) (*en banc*), (*Crowder II*) at the direction of the Supreme Court, this court revisited its opinion in *United States v. Crowder*, 87 F.3d 1405 (D.C. Cir. 1996) (*en banc*), (*Crowder I*) in light of the intervening decision in *Old Chief*. In *Crowder I* this court had held that "[w]here a defendant offers unequivocally to concede elements of a crime—intent and knowledge in [] prosecutions under 21 U.S.C. § 841(a)(1) [criminalizing possessing with intent to distribute and distributing drugs]—and agrees to a jury instruction that the Government need not prove those elements," then "bad acts evidence offered solely to prove those elements is inadmissible because the defendant's concession of intent and knowledge deprives the evidence of any value other than what Rule 404(b)'s first sentence unambiguously prohibits: 'to prove the character of a person in order to show action in conformity therewith.' " 87 F.3d at 1407. In our reconsideration, we concluded that, "[t]ested against the Supreme Court's *Old Chief* decision, the theory of *Crowder I* fails." 141 F.3d at 1206 (citation omitted). We then held "that a defendant's offer to stipulate to an element of an offense does not render the government's other crimes evidence inadmissible under Rule 404(b) to prove that element, even if the defendant's proposed stipulation is unequivocal." *Id*. at 1209. Having found the prior bad act evidence admissible under Rule 404(b), we then concluded it was not barred by Rule 403, rejecting the appellants' argument for "a *per se* rule of exclusion" in such cases under that rule. *Id*. at 1210.

Finally, in *United States v. Linares*, 367 F.3d 941 (D.C. Cir. 2004), which the appellant argues controls this case, the court held that evidence of a prior bad act, admitted at trial under Rule 404(b), was inadmissible because it was not relevant under Rule 401. Linares, a felon, was arrested after shots were fired from the car he was driving and he was subsequently convicted of the offense of felon-in-possession. Three eyewitnesses—two police officers and a female passenger in the car—testified that a male passenger "handed Linares a gun, that Linares later fired it several times, and that still later he held it out his car window and tossed it away." 367 F.3d at 946. In addition, the government sought to introduce, to prove intent, knowledge and lack of mistake, the testimony of a police officer that four and one-half years earlier she had arrested Linares after she saw him drop a loaded handgun onto the ground. The district court admitted the testimony although it had already informed the government that it would not instruct the jury on constructive possession.

On appeal the court concluded the prior crime testimony was not admissible under Rule 404(b) to prove intent, knowledge or mistake. The court found the evidence inadmissible to show intent because "the government had no obligation to prove intent." 367 F.3d at 948. With regard to knowledge, the court explained: "If the jury believed the[] eyewitnesses, then Linares possessed the gun knowingly; if it did not, then it should have acquitted based on the government's failure to prove possession rather than its failure to prove knowledge." 367 F.3d at 946. The court found the evidence inadmissible to show absence of mistake "for essentially the same reason": "Given the government's evidence, no reasonable jury could have found that the government had proven possession but failed to prove absence of mistake." 367 F.3d at 947. Garner contends that for the same reason the court should find MacLean's testimony about the 1999 handgun incident inadmissible in this prosecution. We disagree.

It is true that if the jurors believed Moseley's testimony about Garner's handling the gun, as in *Linares* they would have had to find actual possession and knowledge would not have been in dispute. But, unlike in *Linares*, the trial evidence here, at the time the district court ruled on MacLean's testimony, did not force the jury to a disjunctive choice between actual possession or no possession at all.[6] At the time the district court admitted MacLean's testimony, it could reasonably have believed the jury might discredit Moseley's testimony (based on his observations through a tinted window and smoke-filled compartment) and nevertheless convict Garner based on the undisputed testimony that the gun was found under Garner's seat when the car was searched. In that event, the jury would have faced a paradigmatic constructive possession scenario in which contraband (here, a firearm) is found in proximity to a defendant who may or may not have been " '*knowingly* in a position to, or [have] had the right to exercise "dominion or control" over the

---

[6]The government argues that *Linares* is not binding because it "cannot be squared" with *Old Chief* and *Crowder II*. Gov't Br. 26. *Old Chief* establishes that "evidentiary relevance under Rule 401" is not "affected by the availability of alternative proofs of the element," *Old Chief*, 519 U.S. at 179; *Crowder II* makes clear that the focus of Rule 404(b) is *relevance* and that, for evidence to be relevant, "[t]here does not have to be an 'actual issue' about the facts sought to be proven," 141 F.3d at 1206. *Linares*, the government argues, diverges from this approach because it makes admissibility under Rule 404(b) hinge on the existence (or nature) of other evidence presented at trial. Given this apparent discrepancy, the government urges us to ignore *Linares* and adhere to the earlier decision in *Crowder II*.

We cannot take the government up on its suggestion. *Linares*, after all, expressly discussed *Crowder II*. A decision of the panel "is the decision of the court." *LaShawn v. Barry,* 87 F.3d 1389, 1395 (D.C. Cir. 1996) (*en banc*). If the government believed *Linares* was wrongly decided, it should have petitioned for rehearing by the panel or *en banc* pursuant to District of Columbia Circuit Rule 35.

[contraband].' " *United States v. Jenkins*, 981 F.2d 1281, 1283 (D.C. Cir. 1992) (quoting *United States v. Lawson,* 682 F.2d 1012, 1016 (D.C. Cir. 1982) (emphasis added; alteration in original)). Because "the 'dominion and control' must be 'knowing,' " "mere proximity or accessibility to contraband is not enough" and there must be " ' "testimony connecting the defendant with the incriminating circumstances," ' " *id.* (quoting *United States v. Hernandez,* 780 F.2d 113, 117 (D.C. Cir. 1986); *United States v. Staten,* 581 F.2d 878, 885 n.60 (D.C. Cir. 1978) (quoting *United States v. Ratcliffe,* 550 F.2d 431, 434 (9th Cir. 1976)); internal citations omitted)—a requirement heightened here by the possibility that Haywood, who also had physical access to the gun and whose fingerprint was found on it, might have had exclusive possession of it. *See Jenkins*, 981 F.2d at 1283 (" 'where, as here, contraband is discovered in a place occupied by more than one person, "the sufficiency of the evidence for jury consideration depends upon its capability plausibly to suggest the likelihood that in some discernible fashion the accused had a *substantial* voice vis-a-vis the [contraband]." ' " (quoting *United States v. Foster,* 782 F.2d 1087, 1089 (D.C. Cir. 1986) (quoting *Staten,* 581 F.2d at 884) (emphasis added by *Foster* court))); *cf. id.* at 1283-84 (finding no evidence to support car passenger's dominion and control over nearby sawed-off shotgun bearing other passenger's initials). Under such circumstances, " ' "where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." ' " *United States v. Cassell*, 292 F.3d 788, 793 (D.C. Cir. 2002) (quoting *United States v. King,* 254 F.3d 1098, 1100 (D.C. Cir. 2001) (citing *Huddleston v. United States,* 485 U.S. 681, 689 (1988))). Thus, stripped of Moseley's actual possession testimony, the district court, at the time it admitted MacLean's testimony, could have believed the facts offered "a classic case for introducing prior instances of gun possession, since the

government would otherwise find it extremely difficult to prove that the charged possession was knowing." *Linares,* 367 F.3d at 949.[7] The government introduced just such evidence: McLean's testimony that Garner was previously found in the front passenger seat of a car with a handgun under his seat and a matching ammunition clip in his jacket pocket. This testimony made it more likely that Garner was in knowing possession of the loaded handgun found beneath his seat just as in *Crowder II* evidence that the appellant had previously sold cocaine base made it more probable that he knowingly possessed and intended to distribute the cocaine base found in the brown paper bag he discarded while running from police officers, 141 F.3d at 1209; *see also Cassell*, 292 F.3d at 796 (fact that defendant previously possessed weapons "tends to make it less probable that the weapons recovered from his bedroom were there without his knowledge, without intent, or by accident or mistake") (citing *United States v. Brown,* 16 F.3d 423, 432 (D.C. Cir.), *cert. denied,* 513 U.S. 900 (1994)); *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000) (evidence defendant "possessed and passed counterfeit notes on a prior occasion" relevant because "it decreased the likelihood that [he] accidentally or innocently possessed the counterfeit notes"). Thus, under *Old Chief,* "there w[as] a justification for receiving evidence of the nature of prior acts on some issue other than status (*i.e.,* to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or

---

[7]The conclusion that the prior bad act evidence is admissible under Rule 404(b) does not usually end the inquiry. The government faces "another hurdle, Rule 403," *Crowder II*, 141 F.3d at 1209; *see Old Chief*, 519 U.S. at 184 ("when a given evidentiary item has the dual nature of legitimate evidence of an element and illegitimate evidence of character," trial court must balance probative value and prejudice under Rule 403). Here, however, as already noted, the district court rejected Garner's Rule 403 challenge to the prior bad act evidence and Garner did not appeal the ruling.

absence of mistake or accident,' " and Rule 404(b) therefore "guarantee[d] [the government] the opportunity to seek its admission." *Old Chief*, 519 U.S. at 190.

Garner argues against the constructive possession justification on two grounds. First, he contends that even with the knowledge element provided by MacLean's 404(b) testimony, the evidence of dominion and control was insufficient for the jury to have found constructive possession. To the extent that more was needed to connect Garner to the gun, we believe the testimony by Trainum and Matthews about Garner's movements toward the area where the gun was later found is sufficient. *Cf. United States v. Gibbs*, 904 F.2d 52, 57 (D.C. Cir. 1990) (finding testimony that defendant "reportedly turned, bent down, and took some action below the line of vision of the officers while the car was being followed" supported his constructive possession of drugs found in car with three occupants).

Further, Garner contends the prior possession evidence was inadmissible because the government prosecuted the felon-in-possession case at trial as one of actual, rather than constructive, possession. This is largely true, as the government acknowledges, *see* Gov't Br. 22, but constructive possession (and more specifically, Garner's knowledge of the handgun) was an evident issue when the district court admitted MacLean's testimony. The government sought admission of the 404(b) material "specifically to demonstrate that the gun under the passenger seat, in this case, was put there knowingly and intentionally, that the defendant intended to, and in fact, did exercise dominion and control over it," "[t]hat it was not an accident or mistake that it happened to be under the seat that he was [] seated in." 6/25/2002 Status/Motion Hearing Tr. 28. Further, Garner put knowledge of the gun at issue from the start of the trial, when his counsel argued in his opening statement that "[t]he case against Mr. Garner is about being at the wrong place at the wrong time," 6/5/03 p.m. Trial Tr. 34, a claim

repeated in his closing, *see*, *e.g*., 6/12/03 a.m. Trial Tr. 52. Early in the trial, and apparently before MacLean's testimony was admitted, Garner requested that the court read the jury a statement offering as a defense to the felon-in-possession count that Garner "never possessed or had any connection with . . . the gun police recovered on March 21, 2002" and stating he "denies possessing or having any knowledge that there was a gun in the automobile." Order Denying New Trial, at 5 (filed Aug. 15, 2003). Thus, when the district court admitted MacLean's testimony, the parties treated as material Garner's knowledge *vel non* that the gun was under his seat so as to connect him to it and planned to incorporate the issue into their trial strategies. That the government ultimately elected to focus on the actual possession theory, foregoing a jury instruction on constructive possession, does not render inadmissible evidence of constructive possession offered during the government's case-in-chief when constructive possession was not only viable under the facts but also still in play.

For the foregoing reasons, we conclude that the district court did not abuse its discretion in admitting the prior crime testimony under Rule 404(b) to show Garner's knowledge of the gun's location and of its accessibility to him. The judgment of conviction is therefore affirmed.

*So ordered.*